### GULICK v. INVESTORS' ESTATES CORPORATION.

(Supreme Court, Appellate Term, First Department.    February 4, 1915.)

BROKERS (§ 86*)—ACTION FOR COMPENSATION—EVIDENCE—AGENCY FOR BOTH PARTIES—GOOD FAITH.

In an action for a commission for procuring a lease brought by one employed by the lessor to procure the lease against the lessee, evidence *held* not to show the utmost good faith necessary to enable the plaintiff to recover compensation from both parties.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

Appeal from City Court of New York, Trial Term.

Action by Herbert Gulick against the Investors' Estates Corporation.    Judgment for plaintiff, and defendant appeals.    Reversed, and new trial ordered.

Argued January term, 1915, before GUY, BIJUR, and GAVE-GAN, JJ.

Robert Kelly Prentice, of New York City, for appellant.

Lehmaier & Pellet, of New York City (James S. Lehmaier and William W. Pellet, both of New York City, of counsel), for respondent.

GAVEGAN, J.    The action was to recover broker's commissions. Previous to April, 1914, plaintiff was in the employ of one Hickson, and while so employed the building in which Hickson's place of business was located was the subject of a foreclosure action, as a result of which the corporation owning the property was with the other tenants dispossessed of the premises.    It became necessary, therefore, for

Hickson to procure a new lease from the new owners or secure other quarters.

At about the time the property was to change hands, Hickson became ill and was confined for three weeks in a hospital. In order to lighten his expenses, Hickson reduced plaintiff's salary one-half and told him to keep alive the negotiations for a new lease with defendant. Pursuant to this last employment, plaintiff went to defendant's office and there had several conferences with its officers and agents. .It is conceded that subsequently Hickson became a tenant of defendant under a lease satisfactory in every detail. There was a dispute, however, as to whether plaintiff was the procuring cause of the successful determination of the negotiations between Hickson and defendant.

Plaintiff called no witnesses to corroborate his testimony, but, giving it the most favorable construction, I consider it entirely insufficient to overcome the uncontradicted testimony of defendant. Plaintiff's testimony, in substance, was that before and after Hickson's disability he had several conversations with defendant's president and secretary, at which defendant's general agents were present, and said agents, according to the testimony of all the witnesses, were the brokers who really brought about the leasing of the premises in question. Plaintiff informed defendant that Hickson wanted to procure a lease; and, when the question of commissions was broached, defendant's president promised to give plaintiff full commissions, provided he procured Hickson's consent. To this condition plaintiff agreed. After the execution of the lease, plaintiff produced a letter which purported to be such consent. Hickson, admitting that he wrote the letter, stated that it had been altered by striking out the word "other," and that, if produced as originally written, it would have expressed his real meaning, namely, that he had no objection to plaintiff's receiving a commission on other leases; but he positively denied that he consented to plaintiff's obtaining any commission on this particular lease. On the contrary, Hickson testified that he thought it a reprehensible thing for plaintiff to do while still in his employ, and that he was determined plaintiff should receive no commission, in view of the fact that he was paid $25 a week merely to keep alive negotiations begun and terminated by himself. Plaintiff's failure to take the stand to contradict this testimony or explain the alteration in the letter above mentioned is significant as bearing on the probabilities of the case. Hickson further testified, and in this he is corroborated by the witness McCready, who was defendant's president, that he himself first talked about procuring a lease to Kingsland & Clark, defendant's agents. Fearing the negotiations so started by him might be terminated because of his illness, he employed plaintiff for the special purpose of keeping them alive. Plaintiff, however, told him that he could not "put the lease over," but that he could secure desirable quarters in another part of the city, whereupon Hickson again took the matter up with Kingsland & Clark and consummated it.

It clearly appears, therefore, that plaintiff, without his employer's knowledge or consent, was endeavoring to obtain a commission from defendant while employed by Hickson, for the purpose of negotiating a lease. In fact, plaintiff on cross-examination admitted that he had

been sent to defendant by Hickson. The courts have uniformly refused to aid a broker in obtaining double commissions, unless the utmost good faith is shown, and I am of the opinion that it was not shown in this case. Goodell v. Hurlbut, 5 App. Div. 77, 38 N. Y. Supp. 749 ; Summers v. Carey, 69 App. Div. 428, 74 N. Y. Sup. 980; Nekarda v. Presberger, 123 App. Div. 418, 107 N. Y. Supp. 897.

I think the verdict for the plaintiff was against the overwhelming weight of evidence. It should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur; BIJUR, J., concurring in opinion.

BIJUR, J. I concur on the ground that there is no intelligible evidence from which the jury might infer that plaintiff was the procuring cause of the lease.